## Cronister *against* Weise.

Joint owners of a mortgage, having equal right to manage the same for the advantage of their respective interests, are answerable to each other for nothing but positive misfeasance.

A, being the holder of certain bonds secured by a mortgage, was present at a sheriff's-sale of the mortgaged premises, upon a judgment and execution of B upon another of the bonds, and gave notice of his claim, and that he would sue the mortgage against the purchaser; in consequence of which, the land was sold to the plaintiff in the execution for one-tenth part of its real value. A afterwards discovered that the sheriff's sale divested the lien of the mortgage, and purchased the title which B had acquired by the sheriff's sale. In an action on the mortgage by C, another bond-holder, against the mortgagor, with notice to A as a terre-tenant, it was held, that A was not estopped from asserting the legal effect of the sheriff's sale, in divesting the lien of the mortgage.

ERROR to the common pleas of *Cumberland* county.

Michael Weise, for the use of J. B. M'Lanahan, against Abraham Cronister, administrator of Jacob Cronister, with notice to James Clark, the tenant in possession. *Scire facias sur mortgage.* The plaintiff gave in evidence a mortgage of Jacob Cronister to Michael Weise, of sixty-nine acres of land, to secure the payment of eight bonds of 422 dollars 81 cents each, payable in eight successive years after the 1st of April 1817. Of these he gave in evidence the bond due 1st of April 1820, of which J. B. M'Lanahan was the holder, and which he claimed to recover in this suit; and proved that James Clark was in possession of the land.

The defendant gave in evidence the record of a suit and judgment—Michael Weise, for the use of George R. Leeper, against Jacob Cronister's administrator, founded upon a bond secured by the same mortgage, and payable the 1st of April 1821, and executions thereupon; and a sale of the mortgaged premises on the 8th of April 1824, to George R. Leeper for the sum of 135 dollars; and a deed from George R. Leeper to the defendant, James Clark, for the land, dated 6th of August 1827, for the consideration of 125 dollars.

To rebut this defence, the plaintiff proved that at the time the land was sold by the sheriff to George R. Leeper, James Clark was present and gave notice, " that whoever would buy, would buy a law-suit; that he had a mortgage on the land, and he would push it or claim it," or something to that effect; in consequence of which a

bidder withdrew a bid of 300 dollars, and the land was struck down to George R. Leeper for 135 dollars; and that it was, in fact, worth 2,000 dollars. The plaintiff also proved the declarations of Leeper, both before and after the sale, that he would and had purchased subject to the mortgage.

The defendant requested the court to charge the jury upon the following points:

1. If the levy and sale were not expressly subject to the mortgage, and the deed is not; no loose talk of the by-standers, no opinion which Leeper or his counsel entertained or expressed to each other respecting the effect of the sheriff's sale, will give character to the title conveyed by the sheriff.

2. If Mr Clark did attend the sheriff's sale and give notice that he held the mortgage, and " would push it or claim it," this will not affect the title which Leeper derived from the sheriff's sale.

3. The facts that Mr Clark was mistaken about the law respecting titles made by judicial sales, and his having brought a suit upon the mortgage and afterwards discontinued it and purchased Leeper's title, will not in law so affect his title as to make it subject to the plaintiff's claim in this suit.

4. A sale upon a judgment on a mortgage bond in law, divests the lien of the mortgage as to all other bonds secured by it.

5. Even if Leeper did believe he purchased the land subject to the mortgage, because of the popular understanding at the time of sale to that effect, this would not affect the title of an innocent purchaser from Leeper.

The court answered:

" We consider all these as general propositions, true in reference to the precise state of facts supposed in them respectively. But there still remains some difficulty in the application of these principles to the present case, as they may be affected by other facts in the cause and by the application of other principles equally true.

" It is not the understanding of the sheriff or of the plaintiff in the writ, or of the mortgagee or mortgagor, or of the purchaser in judicial sales, by which the duration and extent of the interest sold is to be measured; sales of this kind are legal sales; they have certain and fixed legal effects, unless altered by the agreement or stipulations of all the parties in interest.

" But there is another principle of the law said to be applicable here, arising out of the doctrine of estoppel. If, in conducting judicial proceedings, a party affirms a certain position, affirms the existence of certain facts, upon which he gains a legal advantage to the direct disadvantage of his adversaries, he afterwards can not turn about, change his position, affirm a contrary state of facts, and obtain another advantage over the same adversaries to their further disadvantage.

" If, when the other parties in interest were pursuing their remedy under one of the bonds recited in the mortgage, when judgment

[Cronister v. Weise.]

had been obtained, execution issued, the land levied on and was offered for sale—if, when a legitimate sale was about to be made, as the plaintiff in that execution had a right to have made of this land mortgaged, out and out for its whole value, freed from the lien of the whole mortgage—if, under such circumstances, James Clark, the present defendant, interposed and objected to the sale being made out and out; told the bidders whoever should buy, would buy a law-suit; that he had a mortgage on the land and that he would push it or claim it; that he did not care about the sale, that no one could cut him out; that he would claim the land under his mortgage, or something to that effect; and if this was done in accordance with the opinion and assent of George Leeper, the plaintiff in the execution, and afterwards the purchaser; and if, in consequence of this notice and position assumed by James Clark, John Moore, a bidder at 300 dollars, withdrew his bid, and the land was struck down at 135 dollars, when it was worth eight or ten times that amount; and if, under the same notice and position assumed by James Clark, and with the assent of Leeper, with the same understanding and in accordance with the same purposes, Clark purchasing the land from Leeper for 125 dollars; if these facts should be found by the jury, I say, in law, James Clark would be estopped from now changing his position, and saying that in law the land was sold free from the incumbrance of the whole mortgage; he could not under such a state of facts, if they are found by the jury to be true; he could not first baffle the parties in interest under the mortgage from making out of the land what it would probably have sold for, if he had not interfered, and in accordance with the same views and purposes, get the title to the land afterwards at a sum even less than the sum for which the land sold at sheriff's sale, and then turn round, assume a new position and affirm a contrary state of facts, and take the whole title to the land free and discharged from the mortgage, and thus cut those parties out of the fund to which he referred, as their security, when it was his intent to do so.

" In accordance with these views and principles, and as explained by the foregoing remarks, we answer the points on the part of the plaintiff in the affirmative."

The defendant excepted to this opinion, and assigned it for error.

*Biddle* and *Watts*, for plaintiff in error, cited 16 *Serg. & Rawle* 414; 2 *Rawle* 167; 2 *Penn. Rep.* 278; *Sug. Vend.* 729; 1 *Johns. Chan.* 219.

*Alexander, contra,* cited 7 *Serg. & Rawle* 468; *Ibid.* 293; 6 *Johns. Chan.* 35; 13 *Serg. & Rawle* 304.

The opinion of the Court was delivered by

GIBSON, C. J.—The sheriff's sale certainly discharged the mortgage at law; and if Clark, then a part owner of it, but now a *terre-tenant*

[Cronister v. Weise.]

defendant at the suit of the other part owner, is to be precluded from insisting on the discharge, his purchase from the sheriff's vendor, must be treated as a trust. But a misfeasance, to make him a trustee *ex maleficio*, must be such as would subject him to an action at law; and it is settled that an action on the case lies not for an act which, though it be to the damage of the party, is not prohibited by the law. Thus it was in Semayne's case, 5 *Co.* 91, where the defendant had shut the door of his house against the sheriff coming to do execution of the goods of another in it; or as it was in the Countess of Salop v. Crampton, *Cro. Eliz.* 784, where a lessee at will had negligently burned his house; or as it is said in *R. Mo.* 420, 453, where a man builds a dove-cote or coney-warren on his land, and the doves or conies hurt the neighbours—in these, and a countless number of other instances, there is *damnum absque injuria*. The sum of the maxim *sic utere tuo* is, that you so use your own as to do no wanton damage to another; in consonance with which is Townsend v. Wathen, 9 *East.* 277, where the defendant, having set traps for dogs, with an intent to allure them into his grounds by the scent of bait prepared for the purpose, was held to be liable only because the purpose was malicious and unlawful. But the *bona fide* exercise of a right, how prejudicial soever its consequences to another, is followed by no such liability. Thus, an arrest for a debt mistakingly supposed due, though ruinous to the party, is justifiable as a fair use of a legal remedy. And the principle is decisive in its application to the duties of part owners, the rule being that a tenant in common is answerable to his fellow only for a voluntary destruction or abuse of the thing. In Martyn v. Knowlys 8 *Term Rep.* 146, it was ruled that the one could not maintain an action against the other for cutting down trees of a proper age and growth, else an obstinate co-tenant might hinder the others from taking the fair profits of their estates. For the same reason, it was held in Fennings v. Lord Grenville, *Taunt.* 241, that the conversion of a chattel to its general and profitable application, even by changing the form of its substance, is not a destruction of the thing to give an action for it betwixt tenants in common, because each has an equal right to take it and use it in its altered state. Nor do I apprehend that an accidental diminution of its value by the process, would have made a difference; for joint owners, having equal right to manage the property for the advantage of their respective interests, are answerable to each other for nothing but positive *misfeasance*. In the application of this principle to the matter in hand, it is to be borne in mind that there was no officious intermeddling with the plaintiff's interest; for Clark professed not to act further than to the extent of his ownership, or for any one but himself. It had not been settled that a sale on a judgment discharged a mortgage; the current of popular opinion was that it did not, and indeed such was the advice of counsel in the particular instance. Clark, the present terre-tenant, then, being a part owner of the mortgage

which stood as a security for bonds separately assigned to the plaintiff and himself, and the land being put up for sale on the judgment of another, warned the bidders of the existence of the mortgage; and desired them to take notice that he meant to enforce it against the land, which consequently sold for about a twentieth of its value, and the mortgage creditors got nothing from the purchase money. Now, though it was, in any event, unnecessary to give verbal notice of a registered mortgage, the warning was, nevertheless, an act of good faith; nor could its tendency to remove misconception, be deemed a legal injury to the plaintiff. On the contrary, it might well have been thought a service to him, as it would preclude an imputation of concealment by him. It was, in truth, no more than a repetition of the notice afforded by the register. Thus it stood at the sale; and it will not be said that Clark had not a right to take measures for the protection of his own interest without the consent of one whose interest was involved with it. To that other, the loss which ensued, was *damnum absque injuria;* while to Clark it was enough that he himself was equally a sufferer, especially as the connection was not of his seeking. And the principle is founded in justice and reason. Parties who have coincident but separate interests, may abridge the freedom of their action, in respect to them, by agreeing to make common cause in the prosecution of them; but pursuing them separately, they are not reciprocally answerable for acts which occasioned no wanton sacrifice. Why, then, ought Clark to have been diverted from the prosecution of a promising measure, by the risk of its consequences, to another? He surely had a right to act for his own preservation, without consulting one whom accident had embarked in the same bottom with him. In the unsettled state of the law at the time, notice of an intended prosecution of the mortgage, might have proved to be indispensable to the safety of all parties; but as it could have given Clark no claim on the plaintiff for a benefit, it shall not subject him to his action for a loss. Even partners in a voluntary association, share the losses which are occasioned by the acts of each other; and there is, to say the least, no room for the application of a severer rule to the mischances of joint owners.

There was nothing in the original transaction, therefore, to affect the terre-tenant's conscience, and it is unimportant whether in analogy to the doctrine of notice, he stands as a purchaser of the imputed innocence of the sheriff's vendee. The court put the cause on the doctrine of *estoppel*, according to which, it was said, a party who has affirmed a fact in a judicial proceeding, by which he gained an advantage over another, may not gain a further advantage over him by disaffirming it. Thus it was assumed that Clark's act was adverse to the plaintiff's right; and that he had gained, while the other had lost by it, neither of which is accurately predicable. It was destined, for good or for evil, to have the same effect on the interest of each; and the loss occasioned by it was mu-

tual. Moreover, the parties stood in no such relation of privity or mutuality as is essential to an *estoppel*, which binds both or neither. The proceeding was not betwixt themselves, for as joint owners they had no antagonist rights; and for that reason, also, it was impossible for the one to gain at the other's expense. But, though their interests were coincident, they might take opposite courses in the pursuit of them, for there was nothing to hinder the plaintiff from encouraging the bidders, by denying the legality of Clark's pretensions; and had he done so, instead of acquiescing in it, the act would not have precluded him from resorting to the land had his own position been found a false one; for a bidder proceeds on his own judgment of the law. A collusive misrepresentation of legal consequences to frighten bidders, might make a different case; but collusion could not be imputed to Clark without imputing to him a design to counteract his obvious interest, unless he were a secret purchaser, which has not been insinuated. Acting in good faith, therefore, his assertion that the sale would not discharge the mortgage, drew after it no legal or equitable responsibility.

Judgment reversed, and a *venire de novo* awarded.